UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRINIDAD KIERULF KLENE,<br><br>    Petitioner,<br><br>        v.<br><br>JANET NAPOLITANO, et al.,<br><br>    Respondents. | No. 11 CV 3921<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

Petitioner Trinidad Kierulf Klene ("Petitioner") seeks review of a denial of an Application for Naturalization under 8 U.S.C. § 1421. Respondents are the Secretary of Homeland Security of the United States, the Attorney General, and the District Director, Chicago District Office of Citizenship & Immigration Services. They seek dismissal of the case on three bases, all related to the fact that Petitioner is currently involved in removal proceedings: first, that this court lacks subject matter jurisdiction; second, that Petitioner states no claim upon which relief can be granted; and third, that she has not exhausted her administrative remedies. Alternatively, Respondents seek a stay of this suit while the removal proceedings continue. For the following reasons, the case must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**I. BACKGROUND**

Petitioner is a citizen of the Republic of the Philippines who was admitted to this country in June of 1994. On December 27, 1996, she married Carl Klene. On November 10, 1997, she sought an adjustment of status based on the marriage. On July 25, 2001, the Department of

Homeland Security ("DHS") granted the status adjustment, thereby making Petitioner a legal permanent resident. On September 17, 2002, Petitioner and Klene were divorced.

On August 1, 2006, Petitioner applied to DHS for naturalization. She attended her naturalization interview on February 15, 2007. Roughly three years later, on March 17, 2010, DHS issued a Notice of Intent to Deny. That denial was apparently based on a DHS determination that Petitioner's marriage was a fraudulent one used solely to thwart the immigration laws.[1] On April 19, 2010, Petitioner timely submitted evidence to rebut DHS's determination, but on July 20, 2010 DHS did in fact deny Petitioner's application. On August 23, 2010, Petitioner filed form N-336, a Request for Hearing on a Decision in a Naturalization Process. The hearing was held on September 13, 2010 and Petitioner appeared with counsel. Following the hearing, on May 3, 2011, the United States Citizenship and Immigrations Service ("USCIS") upheld the denial.

On June 6, 2011, Petitioner filed the current complaint in district court under 8 U.S.C. § 1421(c). On July 20, 2011, DHS issued Petitioner a "Notice to Appear," effectively commencing removal proceedings against her pursuant to 8 U.S.C. § 1229(a). Defendants seek to have the case here dismissed or stayed in favor of the removal proceedings.

---

[1] Petitioner agrees that this was the basis but vigorously disputes the determination on the merits. Indeed, both parties have briefed facts tending to support or refute the "marriage fraud" contention. I do not include those facts, as the merits of that determination are not relevant to the pending motion.

## II. DISCUSSION

8 U.S.C. § 1421(a) provides that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." The same section, however, provides for judicial review:

> A person whose application for naturalization under this title is denied, after a hearing before an immigration officer under section 336(a) . . . may seek review of such denial before the United States district court or the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Plaintiff argues that the plain language of this latter provision unequivocally grants this court the authority to review USCIS's final determination not to naturalize her.

Defendants argue that there is more to the story. Specifically, while they concede that Petitioner would otherwise be able to seek review in a district court, the fact that she is in removal proceedings changes things considerably. Defendants point to 8 U.S.C. § 1429, which states in pertinent part that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act." Defendants have argued that courts refer to § 1429 as a "priority provision" which gives removal (sometimes called deportation) proceedings priority over the naturalization process. *See, e.g., Ajlani v. Chertoff*, 545 F.3d 229, 236 (2d Cir. 2008).

Defendants admit that while the Seventh Circuit has not decided the issue, what circuits have ruled on this have determined that § 1421 (c) review cannot proceed once removal proceedings have commenced. Notably, the Second, Fifth, Sixth, and Ninth Circuits have all

3

concluded "that the priority afforded removal proceedings by § 1429 limits the courts' authority to grant naturalization pursuant to 1421(c) or § 1447(b)."[2] *Id.* (citing *Saba-Bakare v. Chertoff*, 507 F.3d 337 (5th Cir. 2007); *Bellajaro v. Schiltgen*, 378 F.3d 1042 (9th Cir. 2004); *Zayed v. United States*, 368 F.3d 902 (6th Cir. 2004)). In addition, the Fourth Circuit has arguably gone a step further than the previous four circuits. In the relatively recent case of *Barnes v. Holder*, that court, citing the above precedent from the Second, Fifth, Sixth, and Ninth Circuits, stated flatly that "an alien in removal proceedings . . . [has] no right to review of his naturalization application."[3] 625 F.3d 801, 806 (4th Cir. 2010),

I am persuaded by the rulings of the Second and Sixth Circuits and adopt the reasoning of their holdings here. The cases are instructive as to all of the arguments Petitioner makes in favor of the district court proceeding with § 1421(c) review.

First, Petitioner argues that § 1429 does not limit § 1421(c) review because the plain language of § 1429 directs only the "Attorney General" to cease consideration of a naturalization petition while removal proceedings are pending. The *Zayed* decision from the Sixth Circuit addressed this point directly, noting that while it would generally be hesitant to look beyond the language of the statute, in the case of § 1429 a consideration of the legislative history was important. *Zayed*, 368 F.3d at 905. The court noted that the reference to the "Attorney General" came about in the 1990 amendments to § 1429, which amendments reflected the fact that the

---

[2]The latter provision is inapplicable here. It applies to cases in which DHS delays issuing a naturalization decision.

[3]In fact, though the Second Circuit cites *Saba-Bakare* for the more limited proposition, the Fifth Circuit's ruling there sounded in subject matter jurisdiction, implying that the district courts have no power to hear cases under § 1421(c) once removal proceedings had commenced. *See* 507 F.3d at 342.

4

authority to naturalize was switched from the district courts to the Attorney General. *See id., see also* 8 U.S.C. § 1421(a) (vesting naturalization authority in the Attorney General). The court described the language in § 1429 as simply a "corresponding change" meant to align the "priority provision" with the new reality that the Attorney General was the sole entity authorized to grant naturalization. *Id.*

The Sixth Circuit observed that while § 1429 did not operate to strip the district court of jurisdiction in circumstances where removal proceedings have commenced (an argument made here by Defendants, which I reject), it did operate to "limit the scope of the court's review and circumscribe the availability of effective remedies." *Id.* at 906. The effective remedies, the court concluded, could be no greater than what the Attorney General him- or herself could grant. And since the Attorney General cannot consider a naturalization request - much less grant the application - while removal proceedings are pending under § 1429, the district court cannot do so either. It is important to note here how my review would operate: if, hypothetically, Petitioner could win here, her relief would be an order from me to have the Attorney General grant the application. Such an order would be a dead letter, as the Attorney General is statutorily barred from granting the application while removal proceedings are in progress. *Id.*

Petitioner also argues that the circuit court cases above "consist almost entirely" of cases brought not under § 1421(c), which is at issue here, but under the delay provision, 8 U.S.C. § 1447(b). Two points here. First, the Sixth Circuit *Zayed* case, the Fifth Circuit *Saba-Bakare* case, and the Fourth Circuit *Barnes* case all unambiguously were § 1421(c) cases. Additionally, while the Second Circuit's *Ajlani* case was itself a § 1447(b) case, both the holding and dicta strongly implied that § 1421(c) cases would be treated no differently. *See Ajlani*, 545 F.3d at 239

("Three of our sister circuits have considered the question and concluded that the priority afforded removal proceedings by § 1429 limits the courts' authority to grant naturalization *pursuant to § 1421(c) or § 1447(b)* . . . We now join them in reaching the same conclusion." (Emphasis added)). Indeed, the district courts of the Second Circuit have understood *Ajlani* exactly this way. *See, e.g.*, *DeLeon v. Napolitano*, 2011 U.S Dist. LEXIS 55117 (S.D.N.Y. May 23, 2011) (purporting to follow *Ajlani* in granting dismissal in § 1421(c) case).

     A further argument put forth by Petitioner sounds in both law and fact. Petitioner argues that § 1429 does not apply in her case because she was placed in removal proceedings pursuant to a "Notice to Appear" as opposed to an arrest warrant. Petitioner highlights that § 1429 states that "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding *pursuant to a warrant of arrest* issued under the provisions of this or any other Act." 8 U.S.C. § 1429 (emphasis added). However, "[f]or the purposes of [§ 1429], a notice to appear issued under 8 CFR part 239 . . . shall be regarded as a warrant of arrest." *O'Sullivan v. USCIS*, 372 F. Supp. 2d 1097, 1099 n. 2(N.D. Ill. 2005) (citing 8 C.F.R. § 318.1). The "notice to appear" argument is unavailing.

     The final argument Petitioner makes is one of policy. Petitioner argues that a ruling in favor of Defendants in cases like hers would allow the Attorney General to conduct an end run around judicial review by commencing removal proceedings as a matter of course whenever a person is denied naturalization and seeks 1421(c) review. The *Zayed* court addressed this argument by noting that a dismissal in these cases is to be without prejudice pending the outcome of the removal proceeding, thereby allowing a petitioner to get judicial review of a denied naturalization application if they win on the merits in their removal proceedings. *Zayed*, 368

F.3d at 907. It should be noted that the removal proceeding is, itself, subject to review in the circuit court under 8 U.S.C. § 1252(a)(5).[4]

**III. CONCLUSION**

This court cannot grant the requested relief. Therefore, insofar as the motion to dismiss is brought under Rule 12(b)(6), it is GRANTED. The dismissal is without prejudice such that Petitioner may refile her case should she prevail on the merits in her removal proceedings.

ENTER:

James B. Zagel
United States District Judge

DATE: December 27, 2011

---

[4] In rejecting Petitioner's policy argument, I am mindful of Defendants' policy counter-argument that as a practical matter, it is not uncommon for the facts supporting removability to come to light during investigations conducted in the naturalization process.